# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9420 | **DATE** | 9/26/2003 |
| **CASE TITLE** | United States of America, ex rel. Thomas Damnitz vs. John C. Battles, Warden | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Petitioner's habeas petition (Doc. No. 12-2) is denied, as well as his motion for reconsideration of appointment of counsel (Doc. No. 12-3).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 29 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 21 |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 9/26/2003 | |
| | | | date mailed notice | |
| ETV | courtroom deputy's initials | | ETV | |
| | | | mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
03 SEP 26 PM 3:56
FILED
Date/time received in central Clerk's Office

UNITED STATES OF AMERICA, *ex rel.* )
THOMAS DAMNITZ, )
                                    )
                Petitioner, )
                                    )
        v.                          )   No. 02 C 9420
                                    )
JOHN C. BATTLES, WARDEN, ILLINOIS   )   Judge Rebecca R. Pallmeyer
RIVER CORRECTIONAL CENTER,          )
                                    )
                Respondent.         )

DOCKETED
SEP 2 9 2003

## MEMORANDUM ORDER AND OPINION

Petitioner Thomas Damnitz was found guilty by a jury of armed violence, aggravated battery by great bodily harm, and aggravated battery involving use of a deadly weapon, but not guilty of attempted murder and aggravated battery by causing permanent disability. The Circuit Court of Cook County sentenced him to 25 years in prison on the armed violence conviction (he was not sentenced on the other convictions).[1] Damnitz's conviction of armed violence and sentence were affirmed by the Illinois Appellate Court, but his remaining convictions for aggravated battery were vacated because the trial court did not impose a sentence on those convictions. *People v. Damnitz*, 269 Ill. App. 3d 51, 52, 64, 645 N.E.2d 465, 467, 775 (1st Dist. 1995). The Illinois Supreme Court denied leave to appeal. After launching an unsuccessful collateral attack on his conviction through the state's post-conviction review process, Petitioner filed this petition for a writ of habeas corpus on December 23, 2002. He raises several claims here, including ineffective assistance of counsel, deprivation of due process and a fair trial, prosecutorial misconduct, a violation of the prohibition against double jeopardy, and a challenge to his sentence. For the reasons explained here, the petition is denied.

---

[1]     The record is unclear regarding why the trial court opted to sentence Petitioner on only one of his three convictions.

21

## FACTUAL BACKGROUND

A federal court reviewing a petition for writ of habeas corpus under 28 U.S.C. § 2254 presumes the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1); *see also Sumner v. Mata*, 449 U.S. 539, 547 (1981). The court therefore adopts the facts set forth in the Illinois Appellate Court's opinion of December 27, 1994, attached as Exhibit A to Respondent's Answer, and the Illinois Appellate Court's order of October 25, 2001, attached as Exhibit N to Respondent's Answer.

At approximately 3 a.m. on November 29, 1987, as Francisco Vargas drove past a school, he heard the loud sound of something hitting the side of his car. Vargas got out of the car and saw the Petitioner standing in the school yard. Vargas chased Petitioner and struck him with a stick before returning to his car. Minutes later, Petitioner shot Vargas. *Id.* at 53, 645 N.E.2d at 467. The Appellate Court's opinion does not describe Vargas's injuries, but he survived the shot.

At trial, Petitioner's counsel (Larry Drury) announced in his opening statement that he intended to present witnesses who would testify that, prior to the shooting, Hispanic gang members (with whom Vargas was affiliated) had firebombed Petitioner's home and shot at him:

> Mr. Vargas is what is known as a gang banger. He has been for a very long time. He's been out there in the streets, he is part of the Spanish Cobra gang which the evidence will show is a very violent group of individuals . . . [The defendant] . . . lived in a constant state of fear. Constant state of fear, ladies and gentlemen of being killed or shot at, either him individually or his family. . . . You will hear other evidence of yet another meeting and confrontation of [the defendant] and Mr. Vargas where Mr. Vargas along with Allen Martinez again attempts to take his life and attempts to kill him.

(Illinois Appellate Court Order, dated October 25, 2001.)

During the Petitioner's case-in-chief, the court instructed Petitioner's counsel not to present this type of evidence unless he could demonstrate that Vargas himself (not other gang members) participated in the incidents, and the court ordered him to make an offer of proof concerning the testimony of each witness before calling them. *Id.* at 53, 645 N.E.2d at 462 (Order of the Illinois

Appellate Court, dated October 25, 2001, Ex. N to Respondent's Answer, at 15). Petitioner's attorney objected to the requirement, but submitted the offers of proof. After Petitioner had testified, the court permitted certain witnesses to testify regarding an incident between Vargas and Petitioner. *Damnitz*, 269 Ill. App. 3d at 53, 645 N.E.2d at 467.

The Appellate Court's opinion does not clearly identify the witnesses or the nature of their testimony, but Petitioner now claims that Drury was ineffective for failing to present evidence he mentioned in his opening remarks, presumably testimony regarding the incident in which rival gang members firebombed Petitioner's home and shot at him. *Id.* at 58-59, 645 N.E.2d at 471. The Illinois Appellate Court noted that the trial court did permit Damnitz to describe a prior incident in which he said that Vargas, who was with a group of Spanish Cobras, threatened to beat him up. Petitioner's other witnesses corroborated this testimony. *Id.* at 53, 645 N.E.2d at 467. Petitioner also testified that Vargas and another Hispanic youth on another occasion tried to start a fight with him on the street. *Id.*

Presumably on the strength of Vargas's testimony, the jury found Petitioner not guilty of attempted murder and aggravated battery by causing permanent disability, but guilty of armed violence, aggravated battery by great bodily harm, and aggravated battery involving use of a deadly weapon. *Id.*

After the trial and before he was sentenced, Petitioner filed a written motion for substitution of his judge for cause. In an affidavit in support of this motion, Petitioner described several incidents allegedly demonstrating judicial bias, including the court's direction that Petitioner make offers of proof before calling witnesses, while placing no similar restriction on the prosecution. *Id.* at 53, 645 N.E.2d at 468. Petitioner also stated in his affidavit that after the jury returned the verdicts, the court uttered "words to the effect that if he would have heard the case he would have convicted the [Petitioner] of attempted 1st degree murder; anyone who pulls a gun intends to kill." *Id.* This comment, Petitioner argued, showed that the judge was prejudiced against him because

3

he believed Petitioner was guilty of a charge on which the jury found him not guilty. *Id.*

When the court stated his intent to set a date for hearing the substitution motion, Petitioner's counsel spoke up. "With respect to the motion for substitution of Judge, your Honor, I believe I'm accurate in stating that the statute provides that your Honor cannot hear that motion, that it has to be transferred immediately to another judge for hearing," he said. *Id.* at 54, 645 N.E.2d at 468. The court replied, "It's not going to be transferred." *Id.* Counsel reiterated that the statute required transfer of the motion to another judge for consideration, but the judge again denied the request.

On the date the motion was to be heard, Petitioner's counsel again urged that "the law requires this Court to do nothing more than send it to another Judge, the chief Judge, of this division for reassignment to consider the question whether this Court is undu[l]y biased." *Id.* The prosecutor argued that the motion was untimely because it was not presented until after substantive rulings had already been made. The judge denied the motion on its merits, stating that he was not in fact prejudiced. He then sentenced Petitioner to 25 years in the custody of the Illinois Department of Corrections on the armed violence charge. No sentence was imposed on either of the two charges of aggravated battery. *Id.*

Petitioner moved for reconsideration of the substitution motion and sentencing, arguing again that the court violated statutory procedures by hearing and deciding the motion for substitution of judge for cause. The court denied the motion for reconsideration, and Petitioner filed a timely notice of appeal.

**Direct Appeal from Conviction**

In the Appellate Court, still represented by Attorney Drury, Petitioner argued that the trial court violated procedures mandated by statute when he refused to transfer the motion for substitution to another judge. *Id.* at 54, 645 N.E.2d at 468. He also argued that the trial judge

4

committed reversible error by disallowing evidence that Spanish Cobras (other than Vargas) firebombed Petitioner's house and shot at Petitioner on previous occasions. *Id.* at 58, 645 N.E.2d at 471. Petitioner's third claim was that the jury instructions permitted the jury to convict him of armed violence, predicated on battery, and aggravated by the use of a deadly weapon, which Petitioner claims was an improper enhancement from a misdemeanor to a felony. *Id.* at 61, 645 N.E.2d at 473. Petitioner also argued that his sentence should be vacated because the judge based his sentence on his belief that the Petitioner was guilty of attempted murder. *Id.* at 62, 645 N.E.2d at 473. Finally, Petitioner asserted that the court should vacate his convictions of aggravated battery because he was not sentenced on those counts. *Id.* at 63, 645 N.E.2d at 474. On December 27, 1994, the Appellate Court affirmed his conviction, finding that Petitioner did not make even a threshold showing of cause for substitution of judges and that the trial court's exclusion of the evidence related to the firebombing and shootings by gang members other than the victim was harmless error, but vacating Petitioner's convictions for aggravated battery. *Id.* at 61, 63-64, 645 N.E.2d 472, 474.

Petitioner filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court. In his PLA, Petitioner argued that the Appellate Court incorrectly concluded that the exclusion of evidence was harmless; that the trial court's failure to assign another judge to hear the substitution motion violated state law and separation of powers; that Petitioner's conviction must be reversed because it could not be determined which aggravated battery charge was used by the jury as the predicate for the armed violence conviction; and that after the appellate court vacated Petitioner's convictions for aggravated battery, there was no longer a predicate offense to support his conviction for armed violence, necessitating that his conviction be vacated. (Petition for Leave to Appeal to the Illinois Supreme Court, No. 78739, Ex. B to Respondent's Answer.) On June 1, 1995, the Illinois Supreme Court denied the petition for leave to appeal, and, on September 14, 1995, denied Petitioner's motion for reconsideration. (Order Denying Petition for Leave to Appeal, No. 78739, Illinois

5

Supreme Court, Exs. C & D to Respondent's Answer.)

**Post-Conviction Relief**

On June 28, 1995, Petitioner filed a petition for post-conviction relief in the Circuit Court of Cook County, pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq*, in which he initially raised the following issues: (1) whether Petitioner was denied a fair trial in light of the trial court's abuses of discretion, bias, and prejudice against the Petitioner; (2) whether Petitioner was denied due process when the trial court excluded from evidence photographs which purportedly showed that the victim had previously committed acts of violence against Petitioner and his family, as well as testimony from defense witnesses that Petitioner had been threatened by the victim, and evidence that tended to show Petitioner acted in self-defense; (3) whether trial counsel was ineffective for failing to make timely objections and vigorously cross-examine witnesses, and for failing to seek clarification from the trial court regarding the court's evidentiary rulings. (Petition for Post-Conviction Relief, *People v. Damnitz*, No. 89 CR 16148, Circuit Court of Cook County, Ex. E to Respondent's Answer.)

In a supplemental post-conviction petition, filed two days later, Petitioner raised the following additional claims: (4) the trial court violated state law when it refused to transfer the case to another judge to hear the motion for substitution; (5) the trial court erred when it barred evidence that the victim was aggressive and that Petitioner acted in self-defense, and that Petitioner's home and family had been the target of violence committed by gang members; (6) Petitioner's due process rights were violated because it could not be determined which aggravated battery charge the jury relied on as the predicate offense for the armed violence conviction; (7) following the Appellate Court's vacatur of his aggravated battery convictions, Petitioner's conviction of armed violence was no longer valid, and the trial judge imposed a sentence of 25 years on that conviction based on improper considerations; and finally, (8) Petitioner's right to be free from cruel and unusual

6

punishment, and his due process rights, were violated when the trial court (a) denied Petitioner's offer of proof;[2] (b) forced Petitioner to disclose in the presence of the prosecution all of the witnesses who would be testifying on his behalf; (c) forced Petitioner to testify before his witnesses testified; (d) imposed a sentence of 25 years because Petitioner would not accept a plea for 12 years; and (e) brought another prisoner out in front of the jury in the middle of trial in order to complete its daily call of cases. (Supplemental Petition for Post-Conviction Relief, *People v. Damnitz*, No. 89 CR 16148, Circuit Court of Cook County, Ex. F to Respondent's Answer.)

The trial court dismissed the post-conviction petition, but on July 17, 1997, the Illinois Appellate Court summarily reversed and remanded for further consideration. (Order of the Appellate Court, dated July 17, 1997, Ex. G to Respondent's Answer.)

On remand to the trial court, Petitioner filed an Amended Post-Conviction Petition (Amended Petition for Post-Conviction Relief, dated February 19, 1999, *People v. Damnitz*, No. 89 CR 16148, Circuit Court of Cook County, Ex. H to Answer.) In his amended petition, he raised the same issues as in his original post-conviction petition, and several new issues: (9) ineffective assistance of counsel, based on counsel's (a) failure to inform Petitioner that the evidence that Petitioner acted in self-defense was inadmissible, (b) constant argument with the trial judge, (c) failure to subject the prosecution's case to meaningful adversarial testing, (d) failure to present evidence referred to in his opening remarks, (e) failure to impeach a Chicago police officer witness, (f) failure to file motions to suppress Petitioner's statements; (g) failure to excuse a juror who was acquainted with a prosecution witness, and (h) failure to investigate the criminal background of prosecution witness Allen Martinez; (10) the prosecution failed to prove beyond a reasonable doubt that did not act in self-defense; (11) the prosecution improperly referred to Petitioner's post-arrest silence; (12) appellate counsel (Drury) was ineffective for failing to argue that the prosecution

---

[2]     It is not clear which offer of proof Petitioner was referring to.

improperly referred to Petitioner's post-arrest silence during the course of the trial, and for failing to argue that trial counsel was ineffective for not dismissing the juror who was an acquaintance of a prosecution witness; (13) the arresting officers failed to advise Petitioner of his *Miranda* rights; (14) Petitioner was denied his constitutional right to be present during discussions between the judge and jurors; (15) the prosecution took no action to correct the false testimony of the victim, Vargas; (16) the prosecution made improper and inflammatory remarks during the course of the trial, including the statements that (a) Petitioner's photographic exhibits were not persuasive, even though Petitioner was not allowed to show any photographs; (b) Petitioner, upon arrest, claimed that he did not know anything about the offense; (c) referred to "drive-by shootings" and Chicago's high murder rate; (d) referred to Petitioner's "true state of mind," when the trial court barred some of Petitioner's evidence of self-defense; and (e) argued that Petitioner was a liar; and (17) the trial court's bias was evidenced by its *sua sponte* objections, which the court then "sustained." (*Id.*)

Petitioner's counsel (Assistant Public Defender Brendan Max) then filed a second supplemental petition for post-conviction relief which contained still more claims: (18) Petitioner was denied due process when the trial court barred evidence that he acted in self-defense; (19) Petitioner was denied the effective assistance of counsel when his attorney failed to present an offer of proof that Petitioner had been shot by Allen Martinez prior to the night that Petitioner shot the victim, and when his attorney failed to introduce evidence referred to in his opening statement, that Petitioner lived in constant fear of Hispanic street gangs. (Supplemental Petition for Post-Conviction Relief, *People v. Damnitz*, No. 89 CR 16148, Circuit Court of Cook County, Ex. K to Answer.) Still not satisfied that all issues were presented for the court's consideration, Petitioner's counsel filed an amendment to the supplemental petition, in which he argued (20) that Petitioner's conviction and sentence should be vacated because Petitioner was deprived of his constitutional right to effective assistance of counsel as provided by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and sections of the Illinois Constitution.

8

(Amendment to Supplemental Petition, dated June 11, 1999, Ex. J to Respondent's Answer.)

On July 23, 1999, the Circuit Court of Cook County orally dismissed Petitioner's post-conviction petition and all of the arguments raised therein. (Transcript of Oral Ruling, *People v. Damnitz*, No. 89 CR 16148, Circuit Court of Cook County, Ex. K to Respondent's Answer.) Petitioner appealed to the Appellate Court, arguing in a *pro se* submission: (1) the post-conviction trial court committed reversible error when it ignored many of the issues raised in Petitioner's post-conviction pleadings and denied him an evidentiary hearing, and his post-conviction attorney did not comply with Illinois Supreme Court Rule 651(c);[3] (2) the trial court engaged in an improper *ex parte* communication with a juror outside of his presence;[4] (3) trial counsel was ineffective in that he (a) failed to inform Petitioner that evidence of violence and intimidation committed by the victim was inadmissible, thus causing Petitioner to reject a favorable plea deal, (b) failed to adequately challenge the prosecution's case, (c) failed to present evidence to the jury which, in his opening remarks, he claimed he would introduce, (d) failed to excuse a juror who was an acquaintance of a prosecution witness, and (e) failed to investigate the background of Allen Martinez; (4) the

---

[3] Illinois Supreme Court Rule 651(c) states:
Upon the timely filing of a notice of appeal in a post-conviction proceeding, if the trial court determines that the petitioner is indigent, it shall order that a transcript of the record of the post-conviction proceedings, including a transcript of the evidence, if any, be prepared and filed with the clerk of the court to which the appeal is taken and shall appoint counsel on appeal, both without cost to the petitioner. The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner either by mail or in person to ascertain his contentions of deprivation of constitutional right, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions.
ILL SUP. CT. R. 651(c). Petitioner asserts that his post-conviction attorney violated the rule by failing to include all of the issues Petitioner sought to raise on appeal. (Brief and Argument for Defendant-Appellant Thomas Damnitz, received by the Appellate Court December 27, 2000, Ex. L to Respondent's Answer, at 12.)

[4] The record does not reveal which juror Petitioner refers to, although the court assumes it is the individual who was acquainted with one of the prosecution's witnesses, as described *infra.*

9

prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to correct the false testimony of Vargas, (5) the prosecution improperly referred to Petitioner's post-arrest silence and the police did not read him his *Miranda* warnings; (6) the trial court erred when it prohibited Petitioner from introducing evidence that would have bolstered his self-defense argument; (7) Petitioner was improperly charged with three aggravated batteries stemming from one act, in violation of the prohibition against double jeopardy; (8) the trial court violated provisions of Illinois Supreme Court Rule 402 regarding guilty pleas; [5] (9) appellate counsel was ineffective for failing to raise the issue of trial counsel's incompetence stemming from his failure to introduce evidence promised during opening remarks; (10) the prosecution made improper and inflammatory remarks during the course of the trial, including statements that (a) criticized Petitioner's photographs, even though Petitioner was not allowed to introduce any photos in evidence, (b) commented on Petitioner's post-arrest denial of any knowledge concerning the offense, (c) referred to "drive by shootings" and Chicago's high murder rate, and (d) referred to Petitioner's "true state of mind," and called him a liar; (11) the prosecution failed to prove beyond a reasonable doubt that Petitioner acted in self-defense; and (12) Petitioner was denied a fair trial because his attorney and the trial judge constantly argued during the trial, revealing the trial judge's prejudice against Petitioner. (Brief and Argument for Defendant-Appellant Thomas Damnitz, received by the Appellate Court December 27, 2000, Ex. L to Respondent's Answer.)

On March 7, 2001, Petitioner moved to file a supplemental argument with the Appellate Court; the court presumes that motion was granted, because Petitioner did submit a supplemental argument in which he (13) challenged the constitutionality of the Illinois armed violence statute (730 ILCS 5/5-8-1(a)(3)(B) and 730 ILCS 5/5-4-1(B)), as well as (14) the constitutionality of his sentence

---

[5]     Rule 402 requires the trial court to advise a defendant who pleads guilty of the minimum and maximum sentence he faces. ILL SUP. CT. R. 402. Its application here, where Petitioner pleaded not guilty and proceeded to trial, is a mystery to this court.

in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (Motion to File Supplemental Argument Pursuant to *Apprendi*, dated March 7, 2001, Ex. M to Respondent's Answer.)

On October 25, 2001, the Illinois Appellate Court issued an order affirming the trial court's decision to deny post-conviction relief without an evidentiary hearing. (Order of the Illinois Appellate Court, Ex. N to Answer.) Petitioner's motion for reconsideration was subsequently denied on December 5, 2001, without any explanation from the court. (Order of the Illinois Appellate Court, Ex. O to Respondent's Answer.)

On December 7, 2001, Petitioner filed an original petition for mandamus relief in the Illinois Supreme Court, in which, among other things, he requested that the Court order all of his case files to be turned over by the state, order the state to respond to all of the issues raised in his post-conviction petition, and appoint him *pro bono* counsel to file a brief on his behalf (presumably in support of a PLA). (Petition for Mandamus Relief, *Damnitz v. Devine*, No. 10699, Illinois Supreme Court, Ex. R to Respondent's Answer.) On January 30, 2002, the Illinois Supreme Court denied the Petitioner's motion for leave to file a petition for an original writ of mandamus, without explanation. (Order of the Supreme Court of Illinois, dated January 30, 2002, Ex. S to Respondent's Answer.)

Petitioner filed a petition for leave to appeal the denial of post-conviction relief to the Illinois Supreme Court on December 20, 2001, raising the following issues: (1) the trial court engaged in *ex parte* communication with a juror outside of his presence; (2) ineffective assistance of counsel where his trial counsel (a) failed to present evidence referred to in his opening remarks, (b) failed to investigate Allen Martinez's background, and (c) failed to complain about the trial court's *ex parte* communication with a juror; (3) the prosecution knew that Vargas committed perjury; (4) the prosecution improperly referred to Petitioner's post-arrest silence, in violation of the Fifth Amendment, and the police did not read him his *Miranda* warnings; (5) the trial court erred when it prohibited Petitioner from introducing into evidence certain items, such as photographs, which

11

would have bolstered his self-defense argument; (6) Petitioner was improperly charged with three aggravated batteries stemming from one act, in violation of the prohibition against double jeopardy; (7) Petitioner was denied a fair trial because his attorney and the trial judge constantly argued during the trial, evidencing the judge's bias; (8) the trial court erred when it failed to advise Petitioner of the potential minimum and maximum sentences he could be subjected to if found guilty; (9) the post-conviction trial court committed reversible error when it ignored many of the issues raised in Petitioner's *pro se* post-conviction pleadings and denied him an evidentiary hearing, and his post-conviction attorney did not comply with Illinois Supreme Court Rule 651(c); (10) appellate counsel was ineffective for not arguing that (a) trial counsel was ineffective for failure to seek dismissal of a juror who was acquainted with a prosecution witness, (b) trial counsel was ineffective for failure to investigate the backgrounds of prosecution witnesses Allen Martinez and Felix Gerenia, and (c) the trial judge engaged in *ex parte* communications; and (11) the prosecution made improper and inflammatory remarks during the course of the trial, including statements about Petitioner's photographic exhibits, Petitioner's post-arrest statements, drive-by shootings and Chicago's high murder rate, Petitioner's state of mind, and Petitioner's veracity. (Petition for Leave to Appeal, *People v. Damnitz*, Illinois Supreme Court, No. 92938, Ex. P to Respondent's Answer.) On April 3, 2002, the Illinois Supreme Court denied the petition for leave to appeal. (Order of the Illinois Supreme Court, No. 92938, Ex. Q to Respondent's Answer.)

On May 30, 2002, Petitioner filed a Petition for a Writ of Habeas Corpus in the Illinois Supreme Court, in which he challenged the constitutionality of Illinois sentencing statutes 730 ILCS 5/5-8-1(A)(3)(B), and 730 ILCS 5/5-4-1(B), raised issues regarding the violation of his Fifth Amendment rights (double jeopardy and due process), and the constitutionality of his sentence under *Apprendi*. (Petition for Writ of Habeas Corpus, *Damnitz v. Brown*, No. 10812, Illinois Supreme Court, Ex. T to Answer.) The Illinois Supreme Court denied his petition. (Order of the Illinois Supreme Court, dated Sept. 30, 2002, Ex. U to Respondent's Answer.)

12

## DISCUSSION

**Standards of Review**

Section 2254 of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") entitles a prisoner to a writ of habeas corpus if he is being held pursuant to a state court judgment obtained in violation of the United States Constitution. 28 U.S.C. § 2254. For claims that were adjudicated on the merits by a state court, a federal court will not grant a writ of habeas corpus unless that state decision (1) was contrary to or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in that state court proceeding. 28 U.S.C. § 2254(d)(1), (2).

Before an individual may seek habeas relief in the federal courts, however, the petitioner must follow a number of procedural steps. Prior to a federal court considering a writ of habeas corpus on the merits, the petitioner is required to "(1) exhaust all remedies available in state courts . . . and (2) fairly present any federal claims in state court first, or risk procedural default." *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (citations omitted). The "fair presentation" requirement means that a petitioner seeking habeas relief "must provide the state courts with a fair opportunity to apply constitutional principles and correct any constitutional error committed by the trial court." *Id.* at 469. Further, a petitioner is required to set forth his claims "in such a way as to fairly alert the state court to any applicable [federal] constitutional grounds for the claim." *Id.* (citations omitted). A petitioner for habeas relief must submit "both the operative facts and the controlling legal principles of a constitutional claim" before properly seeking habeas review in the federal courts. *Id.* at 469.

**Habeas Petition**

On December 23, 2002, Petitioner filed his petition for habeas relief in this court.[6] (Petition for Habeas.) His petition alleges several violations of his rights, many of which were raised in earlier proceedings. First, Petitioner claims the trial court erred when it did not allow Petitioner to introduce evidence to show that he acted in self-defense, and that his home and family had been the target of violence and threats committed by gang members with whom Vargas was affiliated. Second, Petitioner argues he was denied a fair trial because his trial counsel argued with the judge throughout the trial, and the judge sustained his own *sua sponte* objections, reflecting a bias that necessitated the judge's substitution. Third, Petitioner argues that his trial counsel was ineffective because he failed to present evidence to the jury which, in his opening remarks, he claimed that he would introduce; failed to discuss with Petitioner the advisability of accepting a plea bargain; failed to investigate the background of Allen Martinez, who Petitioner claims had a criminal record, and also that of Felix Gerenia; failed to secure Petitioner's presence at a conference with the judge or keep him informed of matters discussed in chambers; and failed to excuse the juror who knew one of the prosecution's witnesses. Fourth, Petitioner alleges that the prosecution committed a *Brady* violation because it knew that Martinez had a criminal record and that Vargas committed perjury, and yet did nothing to correct the false testimony or hand files on Martinez over to the defense. Fifth, Petitioner argues that his post-conviction counsel was ineffective because he did not comply with Illinois Supreme Court Rule 651(c). Sixth, Petitioner claims that his appellate counsel on direct appeal was ineffective for failing to present issues concerning trial counsel's

---

[6]     The court notes that Damnitz named his habeas petition a "motion for habeas corpus *ad testificandum*," which is normally used to permit an incarcerated person to come to court and testify. Because Petitioner's arguments relate to the validity of his conviction, the court applies the standards for consideration of a habeas petition under 28 U.S.C. § 2254.

ineffectiveness; failing to argue that the juror who knew a prosecution witness should have been excused; and for failing to argue that Petitioner's *Miranda* rights were violated. Seventh, Petitioner claims his Fifth Amendment rights were violated when the prosecution commented at trial on Petitioner's post-arrest silence, made reference to "drive by shootings," Chicago's high murder rate, and Petitioner's "true state of mind." Eighth, Petitioner argues that he was improperly charged with three aggravated batteries stemming from one act, in violation of the prohibition against double jeopardy, the proportionality clause, and *Apprendi*. Ninth, Petitioner contends the trial court engaged in improper *ex parte* communication with a juror. (*Id.* at 12-18.) The court previously denied Petitioner's motion for appointment of counsel; Petitioner now requests that the court reconsider that decision.

**Exhaustion and Procedural Default**

Respondent acknowledges that because Petitioner is precluded from pursuing any further remedies in the state courts, he has exhausted his state court remedies. (Answer, at 15.) Under Illinois law, no additional proceedings regarding post-conviction relief may be held more than six months after the denial for leave to appeal or three years from the date of conviction, whichever is sooner and barring extraordinary circumstances. 725 ILCS 5/122-1(c). Respondent argues, however, that several of Petitioner's claims are procedurally defaulted, and claims that because the remainder of his claims lack merit or are not cognizable for federal habeas review, the petition should be denied. The court will address each of Petitioner's claims in turn.

I.     Petitioner claims that the trial court erred when it did not allow him to introduce evidence showing that Petitioner acted in self-defense because of Vargas's aggressiveness, and because his home and family had been the target of violence and threats committed by gang members.

Respondent argues that this claim, which concerns the admissibility of evidence under Illinois law, should be dismissed as not cognizable for federal review. Respondent is correct that rules regarding the admissibility of evidence in a state criminal trial are matters of state law, and

violations of state evidentiary laws generally do not form the basis upon which federal habeas corpus relief can be granted. *U.S. ex rel. Searcy v. Greer*, 768 F.2d 906, 910 (7th Cir. 1985). Habeas relief is appropriate only if erroneous evidentiary rulings were "so prejudicial that [they] compromise[d] the petitioner's due process right to a fundamentally fair trial. This means that the error must have produced a significant likelihood that an innocent person has been convicted." *Anderson v. Sternes*, 243 F.3d 1049, 1053 (7th Cir. 2001), quoting *Howard v. O'Sullivan*, 185 F.3d 721, 723-24 (7th Cir. 1999).

To consider the significance of the alleged errors, a court must examine "the entire record, paying particular attention to the nature and number of alleged errors committed; their interrelationship, if any, and their combined effect; how the trial court dealt with the errors, including the efficacy of any remedial measures; and the strength of the prosecution's case." *Alvarez v. Boyd*, 225 F.3d 820, 825 (7th Cir. 2000). The court must determine whether "but for the errors, the outcome of the trial probably would have been different," thus denying the Petitioner his due process right to a fundamentally fair trial. *Id.*

Petitioner argues that the trial court committed error by disallowing evidence of the firebombings and shootings of Petitioner and his family. He argues that the excluded evidence proved both that Vargas was more likely to have been the aggressor because he was prone to violence, and that Petitioner had reason to believe that he needed to use deadly force to fight off Vargas's attack. As the Illinois Appellate Court noted, Damnitz was permitted to introduce evidence that the victim was a member of the Spanish Cobras. In addition, it appears from the Appellate Court's opinion that Petitioner was permitted to testify that he once saw Vargas with a group of people, and heard some group members shout out the gang slogan "Cobra love." *People v. Damnitz*, 269 Ill. App. 3d at 59, 645 N.E.2d 471. The jury apparently learned from a police officer's testimony that the Cobras and Petitioner's own gang, the Freaks, were rivals. *Id.* Another prosecution witness testified that members of the Cobras had killed several members of Petitioner's

16

own gang. *Id.* at 61, 645 N.E.2d at 472. The Appellate Court held that Petitioner should have been permitted, further, to introduce evidence of prior violent acts by other Cobras against Petitioner and his family to prove that he acted reasonably in arming himself, even if Petitioner could not connect Vargas directly to that evidence. *Id.* at 60, 645 N.E.2d at 472. The Appellate Court concluded, however, that the error in excluding the evidence was harmless, because the trial court had admitted ample evidence to show that Vargas was a member of the Spanish Cobras (described above) and that Vargas himself had threatened Petitioner. Although the excluded evidence would have further shown why Petitioner believed Vargas might use deadly force, the court found that it would have added little to the evidence the jury heard. *Id.* at 60-61, 645 N.E.2d at 472.

This court is not called upon to review the Appellate Court's analysis *de novo*. Instead, Petitioner has the burden of demonstrating that the Illinois Appellate Court's opinion was contrary to, or employed an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). This court might well have drawn the line of admissibility differently. Petitioner has not met the burden of showing that the Appellate Court's analysis is at odds with clearly established federal law, however. The petition for relief on this basis is denied.

II.     Petitioner claims that he was denied a fair trial because his trial counsel argued with the judge throughout the trial, and because the judge's *sua sponte* evidence rulings reflect a bias which necessitated that the judge be substituted for cause.

Petitioner's second claim for relief may be divided into two arguments. First, Damnitz argues that his trial judge should have been substituted for cause. Second, he argues that the judge's actions displayed a bias in favor of the prosecution which denied the Petitioner a fair trial. Damnitz raised the substitution issue on direct appeal to the Illinois Appellate Court, but he failed to raise it in his petition for leave to appeal to the Supreme Court, nor did he raise it in the post-conviction petition stage. Because Petitioner did not give the Illinois courts a full opportunity to address this claim, he may not raise it in his habeas petition, and the claim is waived. *O'Sullivan*

17

*v. Boerckel*, 526 U.S. 838, 845 (1999). Petitioner has not demonstrated cause or prejudice with regard to his failure; accordingly, the court dismisses this claim for relief. *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977).

Petitioner did argue on direct appeal and in his post-conviction briefs that the trial judge was prejudiced against him, as evidenced by his constant bickering with Petitioner's trial attorney, the fact that the judge sustained his own objections[7], made erroneous rulings on various motions, and remarked at the Petitioner's sentencing that he believed Petitioner was guilty of attempted murder. Therefore the court addresses the merits of this argument.

The right to a fair trial includes the right to an unbiased judge. *Bracy v. Gramley*, 520 U.S. 899, 904-905 (1997); *In re Murchison*, 349 U.S. 133, 136 (1955). The Supreme Court stated "[N]o man is permitted to try cases where he has an interest in the outcome." *In re Murchison*, 349 U.S. at 136. Thus, in *Tumey v. Ohio*, 273 U.S. 510, 523 (1927) the Court found a due process violation when a judge received a portion of the costs and fees he imposed on violators. *Id.* Similarly, in *Ward v. Monroeville*, 409 U.S. 57, 57-59 (1972), the Court held that the plaintiff was denied due process by a mayor sitting as a judge regarding certain ordinance and traffic violations, when a substantial portion of the city's funds were raised in connection with the mayor's court. Lastly, in *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986), the Court invalidated a ruling of the Alabama Supreme Court written by a justice who had a personal interest in the outcome of the decision. *Bracy*, which arose in this court, involved circumstances in which the trial judge's practice of accepting bribes for acquittals in other cases arguably motivated him to convict persons who, like defendant, did not pay bribes.

---

[7] According to Petitioner, the trial judge independently objected to certain requests made by Petitioner's counsel, and then sustained his own objection. For instance, in Petitioner's brief on post-conviction appeal, Petitioner asserts that the trial judge objected to counsel's request that the judge recuse himself from the case, without any similar objection from the State. (Petitioner's Brief on Post-Conviction Appeal, Ex. L, at 48-49.)

The alleged bias here bears no relation to the circumstances of *Ward, Tumey, Aetna*, or *Bracy*. Petitioner has not suggested that the trial judge in his case had a direct, personal, substantial, or pecuniary interest in ruling against him, and the Illinois Appellate Court found no support for Petitioner's claim that the trial judge was biased against him. *Damnitz*, 269 Ill. App. 3d at 58, 645 N.E.2d at 470-71. Again, Petitioner offers no basis for concluding that the Appellate Court's decision was contrary to, or constituted an unreasonable application of, federal law. 28 U.S.C. § 2254(d)(1), (2). The fact that the trial judge found the evidence more persuasive than the jurors themselves did does not reveal personal bias. The petition for habeas relief is denied.

III. Petitioner claims that his trial counsel was ineffective where: 1) he failed to present evidence to the jury which he claimed he would introduce in his opening statement; 2) he failed to discuss with Petitioner the advisability of accepting a plea bargain; 3) he failed to investigate the background of prosecution witnesses Allen Martinez and Felix Gerenia; 4) he failed to secure Petitioner's presence at a conference with the judge or keep him informed of matters discussed in chambers; and 5) he failed to excuse the juror who knew one of the prosecution's witnesses.

Although the court will address each of Petitioner's five allegations of ineffectiveness separately, the same standard governs all such claims. Under *Strickland v. Washington*, a petitioner arguing ineffective assistance of counsel is required to show, first, that counsel's performance fell below an objective standard of competence, and second, that there is a reasonable probability that, but for counsel's incompetence, the result of the trial would have been different. 466 U.S. 668, 687 (1984).

1. Petitioner contends that trial counsel was ineffective because he failed to present evidence to the jury which he claimed he would introduce in his opening statement, specifically, evidence that the victim's gang, the Spanish Cobras, had previously committed violent acts against Petitioner and his family, causing Petitioner to fear for his family's safety. The court earlier quoted counsel's opening remarks. During the trial, counsel attempted to introduce photographs into evidence showing bullet holes and fire damage to Petitioner's home, a bullet wound to Petitioner's leg, all of which the trial judge deemed inadmissible. (Order of the Illinois Appellate Court, dated

October 25, 2001, Ex. N to Respondent's Answer.)

In rejecting this claim on post-conviction review, the appellate court found that Petitioner's trial counsel was not ineffective because he "made good-faith attempts to introduce the evidence promised in opening statement and, in fact, did present at least some testimony on the issue." (*Id.* at 17.) In making this finding the Illinois Appellate Court applied *Strickland,* which "undoubtedly qualifies as 'clearly established' Federal law, as determined by the Supreme Court of the United States,' within the meaning of [AEDPA]." *Williams v. Taylor,* 529 U.S. 362, 413 (2000). Petitioner has not cited, nor has the court uncovered, a Supreme Court case with facts that are materially indistinguishable from those in this case. Therefore, the Illinois court's decision was not "contrary to" established federal law. *Roche v. Davis,* 291 F.3d 473, 481 (7th Cir. 2002). Similarly, the Illinois Appellate Court's decision was not an unreasonable application of federal law. This court may not issue a writ of habeas corpus "simply because [it] conclude[s] . . . that the relevant state-court decision applied [*Strickland*] erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams,* 529 U.S. at 411. Given the facts in the record, the court is unable to conclude that the Appellate Court's decision was unreasonable.

2.      Petitioner next claims that his counsel was ineffective for failing to discuss with Petitioner the advisability of accepting a plea bargain in exchange for a 12-year sentence. The court declines to consider the merits of this claim, however, because Petitioner failed to raise this issue in his petition for leave to appeal to the Illinois Supreme Court on his post-conviction petition. As Respondent points out, in order to avoid waiving an issue, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845; *White v. Godinez,* 192 F.3d 607, 608 (7th Cir. 1999) (holding that the rule of *O'Sullivan* applies equally to a habeas petitioner's failure to raise an issue in post-conviction proceedings).

Petitioner does not attempt to excuse his failure to raise the issue at all stages of his post-

conviction proceedings, and the court does not discern any possible cause for his failure. Therefore, because Petitioner did not raise this portion of his ineffective assistance of counsel claim in his petition for leave to appeal, the claim is dismissed as procedurally defaulted.

3.     Petitioner claims counsel failed to investigate Allen Martinez and Felix Gerenia's backgrounds. In its order affirming the trial court's denial of post-conviction relief, the Illinois Appellate Court noted that when a post-conviction defendant alleges that his trial counsel was ineffective for failing to investigate witnesses, he must attach to his petition affidavits showing the potential testimony or information about such witnesses, and explain the significance of the excluded testimony. (Illinois Appellate Court Order, dated October 25, 2001, citing *People v. Dean*, 226 Ill. App. 3d 465, 468, 589 N.E.2d 888, 890 (1992)). Because Petitioner did not do so, the court held that he failed to demonstrate a reasonable probability that the outcome of his trial would have been different if counsel had interviewed the witnesses in question.

The Appellate Court's rejection of Petitioner's claim because of his failure to attach affidavits to his petition has adverse consequences for his claim in this court. *Wainwright,* 433 U.S. at 87; *Harris v. Reed,* 489 U.S. 255, 263 (1989) (under the "independent and adequate state ground" doctrine, federal courts are barred from considering a habeas corpus petitioner's constitutional claims if the last state court rendering judgment in the case "clearly and expressly" stated that its judgment rested on a state procedural bar.) The Illinois Appellate Court was not able to reach the merits of Petitioner's claim because he did not comply with state law, and Petitioner does not argue cause or prejudice here. Therefore this court will not address the merits of the claim.

4.     Petitioner claims that his attorney was ineffective because he failed to secure Petitioner's presence at a conference with the judge or keep him informed of matters discussed in chambers, and because his lawyer failed to excuse a juror who knew one of the prosecution's witnesses. In addressing this issue, the Illinois Appellate Court summarized the events giving rise to this claim:

When the State called Dr. Leonard Cranzler to the stand to testify regarding the injuries suffered by Vargas, it was brought to the trial court's attention that a juror, D. Schumann, indicated that he recognized the doctor. The trial court called Schumann into chambers where he was questioned by defense counsel. He indicated that he recognized Dr. Cranzler as a cantor from his synagogue, but stated that he neither socialized with him nor sought his professional advice. He further stated that he did not think he would give the witness' testimony more weight because of this attenuated relationship, but could not say for certain. However, Schumann later affirmed that he could give the same credibility to the doctor that he would give any other witness. He informed the court that he told the only juror next to him that he knew the doctor. The trial court indicated that defense counsel could excuse Schumann and use an alternate juror. Defense counsel excused himself so that he could inform the defendant of the situation. Afterwards, Schumann was not excused; rather, the trial court admonished him not to inform other jury members as to why he was called into chambers and then admonished the other jurors not to question Schumann. The trial court stated that it was not necessary to question the juror to whom Schumann spoke as to whether he informed any other jurors that Schumann knew the doctor.

(Illinois Appellate Court Order, dated October 25, 2001.) The court noted that based on the record, it was clear that the trial court made a judgment that the juror would be fair and impartial, and that the trial court was in a position to evaluate the juror's responses and determine whether the juror's acquaintance with the witness would affect the trial. (*Id.*) The court concluded that the record did not suggest that Schumann or the remainder of the jury was prejudiced against the Petitioner or otherwise tainted. Therefore the court concluded that Petitioner failed to prove that he was prejudiced, a requirement under *Strickland*. 466 U.S. at 687.

Again, Petitioner has not shown that the Appellate Court's analysis constituted an unreasonable application of the *Strickland* standard. 28 U.S.C. § 2254(d)(1). Nor has Petitioner introduced new evidence which suggests that the juror's acquaintance with the witness actually did affect the trial. For these reasons, the court denies Petitioner's claims of ineffective assistance of counsel.

IV.     Petitioner claims that the prosecution committed a *Brady v. Maryland* violation because the prosecution knew that Vargas committed perjury, and because the prosecution failed to turn over files regarding Martinez's criminal background to the defense.

Petitioner argues that the state withheld evidence regarding Vargas's friend, Martinez, who

was with Vargas at the time of the shooting and who Petitioner claims is a convicted felon.[8] Vargas testified at trial that neither he nor his friends were members of a gang. (Illinois Appellate Court Order, dated October 25, 2001.) Petitioner maintains that Vargas lied, and that Martinez's criminal record would have divulged his own gang membership.

On appeal to the Illinois Appellate Court during the post-conviction phase, the court found that Petitioner failed to support his allegation with competent evidence of Martinez's criminal history. (*Id.*) The court noted that if allegations in a post-conviction petition are not supported by the record, they must be supplemented with additional evidence, such as accompanying affidavits. (*Id.*, citing *People v. Gaines*, 105 Ill.2d 79, 91-92, 473 N.E.2d 868 (1984)). Petitioner did attach as "exhibit A" to his amended petition for post-conviction relief a document which purported to be Martinez's criminal record from the Illinois Department of Corrections, but the Appellate Court noted that the document was not certified and of unknown origin. (*Id.*) In any event, the court stated that even if the document was valid, it did not support the Petitioner's contention. (*Id.*) The court noted that relief under *Brady* is not available unless the defendant can establish that the evidence improperly withheld was material to the defense, i.e. "If there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," *People v. Coleman*, 183 Ill.2d 366, 393, 701 N.E.2d 1063, 1077 (1998), quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985). Concluding that Petitioner had now shown that he could have impeached Vargas with the evidence, the court dismissed Petitioner's claim. (Illinois Appellate Court Order, dated October 25, 2001.)

Respondent argues that Petitioner has procedurally defaulted on this claim because the Illinois Appellate Court determined he did not comply with the Illinois Post-Conviction Act, citing 725

---

[8]     The court presumes that Martinez did not testify at trial; Petitioner argues that Martinez *should have* been called by the State to benefit his defense. (Illinois Appellate Court Order, dated October 25, 2001, at 9-10.)

ILCS 5/122-2. The Appellate Court did indicate that Petitioner had failed to submit evidence to support his claim, but the court did not cite the Illinois statute to which Respondent refers, and in this court's view, did not make clear that its decision was based on this failure. Therefore, this court will address the merits of Petitioner's claim. Upon review, however, the court concludes that Petitioner has not successfully shown that evidence withheld by the state was material to his defense.

A violation of *Brady v. Maryland* occurs when evidence withheld by the prosecution is (1) favorable insofar as it is exculpatory or impeaching, (2) suppressed either willfully or inadvertently, and (3) material insofar as the defendant was prejudiced by its suppression. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). It is unclear whether the record before this court contains the document Petitioner submitted to the Illinois Appellate Court about Martinez's criminal background. The only document in the record which relates to Allen Martinez is a printed page from the Illinois Department of Corrections's website, which was apparently submitted for the first time by the Petitioner in his petition for leave to appeal to the Illinois Supreme Court after the Appellate Court affirmed the denial of post-conviction relief. (Petition for Leave to Appeal, dated December 20, 2001, Ex. P to Respondent's Answer.)

Assuming that the web page print-out was indeed the document that Petitioner submitted to the Appellate Court, this court concludes Petitioner was not prejudiced by its purported suppression. The court notes, first, that it is unclear whether the document was actually suppressed by the prosecution because the relevant information was apparently downloaded from the Internet. As a result, Petitioner has not established that his own lawyer was prevented from discovering this information about Martinez. In addition, the only evidence suggesting Martinez had a gang affiliation is the description of a tattoo of a cobra on Martinez's right shoulder (the record does not reflect whether the word "cobra" or the animal was depicted in the tattoo). In order to grant relief under *Brady*, the court must find that the Petitioner was prejudiced by the suppression

24

of the evidence. In this case, the court is unwilling to find that Petitioner was prejudiced by the suppression of evidence that might have allowed the jury to infer Martinez's gang affiliation, when the defense was allowed to introduce other evidence at trial demonstrating Vargas' own gang affiliation. Lastly, if the web page is not the document that Petitioner submitted to the Appellate Court, then it is not possible to form a judgment about the actual document's materiality. For these reasons, Petitioner's *Brady* claim is dismissed.

V.      Petitioner's claim that his post-conviction counsel was ineffective because he did not comply with Illinois Supreme Court Rule 651(c).

As Respondent points out, this claim cannot be reviewed by this court, because AEDPA bars review of the performance of counsel in post-conviction petitions. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.") Accordingly, the court dismisses this claim with prejudice.

VI.     Petitioner claims that his counsel on direct appeal was ineffective for failing to present certain issues concerning trial counsel's ineffectiveness; for failing to argue that the juror who knew the prosecution witness should have been excused; and for failing to argue that Petitioner's *Miranda* rights were violated.

Petitioner argues that his appellate counsel should have raised several issues regarding his trial counsel's ineffectiveness.[9] First, appellate counsel should have argued that trial counsel failed to discuss a plea bargain with Petitioner; that trial counsel failed to dismiss a juror who knew one of the prosecution witnesses or inform Petitioner of what was said in the judge's chambers; that trial counsel failed to investigate Martinez or Gerenia; and that he failed to present exculpatory evidence that would have supported the Petitioner's self-defense claim. At the post-conviction

---

[9]      The court notes that in the federal system that the issue of ineffective assistance is often not asserted on direct appeal. Whether or not such a claim is or could be brought on direct appeal, "ineffective assistance of counsel claim may be brought in a collateral proceeding under 2255." *Massaro v. United States*, 123 S.Ct. 1690, 1694 (2003) (abrogating *Guinan v. United States*, 6 F.3d 468 (7th Cir. 1993)).

stage, however, Petitioner argued only one of these alleged shortcomings, the failure of appellate counsel to raise the issue of excusing the juror. And on appeal from the denial of post-conviction relief, Petitioner failed to re-raise the issue of the juror's dismissal. Therefore, Petitioner procedurally defaulted on all of these claims for relief. *White*, 192 F.3d at 608; *see also Cawley v. DeTella*, 71 F.3d 691, 694 (7th Cir. 1995) (failure of a habeas petitioner to appeal the dismissal of a post-conviction petition "will ordinarily be treated as an independent and adequate state ground," as well as under the *O'Sullivan* standard.) Petitioner has not argued cause and prejudice here, and therefore the court declines to address the merits of these claims.

Regarding Petitioner's claim that his appellate counsel was ineffective for failing to argue that the prosecution violated his *Miranda* rights, Respondent correctly points out that this claim is also procedurally defaulted, because Petitioner failed to raise it in his petition for leave to appeal to the Illinois Supreme Court. Petitioner has not attempted to show cause for this failure, nor has he demonstrated prejudice, and therefore this claim is dismissed as well.

VII.    Petitioner claims that his Fifth Amendment rights were violated when the prosecution commented during closing arguments about Petitioner's post-arrest silence, and referred to "drive by shootings," Chicago's high murder rate, and Petitioner's "true state of mind."

Petitioner argues that his Fifth Amendment rights were violated because the prosecution mentioned his post-arrest silence during closing arguments. The Appellate Court noted that Petitioner was barred from directly raising the issue because he could have done so earlier, but did address the issue under Petitioner's ineffective assistance of counsel claim. (Illinois Appellate Court Order, dated October 25, 2001, Ex. N to Respondent's Answer.) The fact that the court addressed the merits of the issue as part of Petitioner's ineffective assistance of counsel claim does not change the fact that Petitioner waived the underlying argument that his Fifth Amendment rights were violated. Because the state court dismissed the claim for procedural reasons, Petitioner is similarly barred from raising it in his habeas petition. *Harris*, 489 U.S. at 263. As Petitioner has failed to demonstrate cause for or prejudice arising from this failure, the claim is

dismissed.

With respect to Petitioner's argument that the prosecutor improperly referred to Chicago's murder rate and "drive-by shootings," the Appellate Court also deemed this to be waived, and therefore this court is barred from addressing it. (Order of the Appellate Court, dated October 25, 2001, at 22.); *Harris*, 489 U.S. at 263. Although the Appellate Court did not specifically mention the prosecution's comment regarding Petitioner's "true state of mind," the court believes that the Appellate Court deemed this argument waived as well. The Appellate Court found that Petitioner failed to argue that the prosecutor's closing argument was inflammatory and prejudicial on direct appeal and thus, held that the issue was waived. (*Id.*) In any event, the court does not believe that Petitioner was prejudiced by the prosecutor's comment, when Petitioner himself put his state of mind at issue by arguing self-defense at trial. Accordingly, the court denies Petitioner's claim for relief on this issue.

VIII. Petitioner claims that he was improperly charged with three aggravated batteries stemming from one act, in violation of the prohibition against double jeopardy, the proportionality clause, and *Apprendi*.

Petitioner argues that the state violated the prohibition against double jeopardy guaranteed by the Fifth Amendment to the Constitution. On post-conviction review, the Illinois Appellate Court held that Petitioner waived this claim by failing to raise it earlier. (Illinois Appellate Court Order, dated October 25, 2001.) Given Petitioner's failure to argue cause or prejudice, the court dismisses Petitioner's claim as procedurally defaulted. *Harris*, 489 U.S. at 263.

Similarly, the Appellate Court found that Petitioner could have raised his proportionality argument earlier, and his failure to do so constituted a default. (Illinois Appellate Court Order, dated October 25, 2001.) In any event, Petitioner's argument about proportionality in the Illinois Appellate Court was based on Illinois law, and thus, even if Petitioner had not procedurally defaulted, the issue would not be cognizable on federal habeas review. *Morgan v. Krenke*, 232 F.3d 562, 567 (7th Cir. 2000). Therefore this claim is dismissed.

Finally, Petitioner argues that his sentence was unconstitutionally enhanced under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), where the Supreme Court held that any fact other than a prior conviction which increases the maximum statutory penalty for a crime must be submitted to a jury, and proven beyond a reasonable doubt. *Id.* at 490. Petitioner argues that because he was acquitted by the jury of attempted murder, the sentencing court should not have been able to consider the fact that he came close to killing Vargas in determining his period of incarceration.

The state responds that *Apprendi* does not apply retroactively, and therefore this claim must be dismissed. The state is correct; our Court of Appeals has held that *Apprendi* "does not disturb sentences that became final before June 26, 2000, the date of its release." *Curtis v. United States,* 294 F.3d 841, 844 (7th Cir. 2002). More importantly, however, the Court's ruling in *Apprendi* does not apply unless a defendant has been sentenced to a term in excess of the statutory maximum. *United States v. Bjorkman,* 270 F.3d 482, 491 (7th Cir.2001), citing *Apprendi,* 530 U.S. at 490. That has not occurred here and as a result, Petitioner's *Apprendi* claim is dismissed.

IX.   Petitioner claims that the trial court engaged in improper *ex parte* communication with one juror.

Petitioner's final claim is that the trial judge improperly engaged in *ex parte* communication with a juror outside the Petitioner's presence. The Illinois Appellate Court reached the merits of this claim in the context of Petitioner's ineffective assistance of counsel claim, discussed above, but noted that the underlying claim was waived because Petitioner failed to raise it on direct appeal. (Illinois Appellate Court order, dated October 25, 2001.) The waiver bars Petitioner's claim absent a showing of cause and prejudice or a fundamental miscarriage of justice. *Wainwright,* 433 U.S. at 87-88; *Schlup v. Delo,* 513 U.S. 298, 324-26 (1995). No such showing has been made here.

## CONCLUSION

For these reasons Petitioner's habeas petition (No. 12-2) is denied, as well as his motion

for reconsideration of appointment of counsel (No. 12-3).

ENTER:

Dated: September 26, 2003

REBECCA R. PALLMEYER
United States District Judge